IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

In re                                                        No. 3:16-cv-02346-HZ

Data Systems, Inc.,

                    Debtor,                                  Chapter 11
                                                             No. 16-30477-rld11

WILLIAM F. HOLDNER,

              Plaintiff-Appellant,                           OPINION & ORDER

        v.

AMY E. MITCHELL, Trustee,

              Defendant-Appellee.


William F. Holdner
975 S.E. Sandy Boulevard
Portland, Oregon 97214

        Plaintiff-Appellant Pro Se

/ / /


1 - OPINION & ORDER

Justin D. Leonard
Timothy A. Solomon
LEONARD LAW GROUP, LLC
1 S.W. Columbia, Suite 1010
Portland, Oregon 97258

      Attorney for Defendant-Appellee

Sandra S. Gustitus
Brian D. Chenoweth
CHENOWETH LAW GROUP, PC
510 S.W. Fifth Avenue, Fifth Floor
Portland, Oregon 97204

Shawn P. Ryan
Gus J. Solomon U.S. Courthouse
620 S.W. Main Street, Suite 612
Portland, Oregon 97205

      Attorneys for Interested Party Richard Kreitzberg

HERNANDEZ, District Judge:

On February 11, 2016, debtor Data Systems, Inc., filed a petition for bankruptcy under Chapter 11 of the Bankruptcy Act.  On December 7, 2016, the Bankuptcy Court entered an Order confirming the First Amended Plan of Organization proposed by Defendant-Appellee Amy Mitchell, who was the duly-appointed Chapter 11 Trustee.  Plaintiff-Appellant William F. Holdner is the debtor's President and a director.  He also owns approximately 22% of the debtor's stock.

On December 20, 2016, Holdner appealed the Bankruptcy Court's December 7, 2016 Confirmation Order to this Court.  Holdner seeks to reverse the Confirmation Order.  Pl.-Appnt Reply 4-5, ECF 33.  Alternatively, he seeks an Order requiring an "independent appraisal of the debtor'(s)-shareholders interests value of the shares under the company's proposed 5 year Plan of

2 - OPINION & ORDER

Liquidation." *Id.* Because the Bankruptcy Court committed no error, there is no basis for reversing the Confirmation Order or requiring the requested appraisal. Therefore, I affirm the Bankruptcy Court's December 7, 2016 Confirmation Order.

I. Background and the Confirmation Order

The Confirmation Order expressly states that it is based on the Bankruptcy Court's Findings of Fact and Conclusions of Law as set forth in the Bankruptcy Court's December 6, 2016 Amended Memorandum Opinion. Dec. 7, 2016 Conf. Ord., ECF 5-1 at 21[1].

The Amended Memorandum Opinion sets forth the factual background, including the debtor's early history, its operations, and its assets. Dec. 6, 2016 Am. Mem. Op. 2-9. Although Holdner presents his own factual history in his Opening Memorandum, he points to no error by the Bankruptcy Court in its factual background recitation. Thus, I rely on the factual background as set forth in the December 6, 2016 Amended Memorandum Opinion and incorporate it by reference here.

In issuing the December 7, 2016 Confirmation Order, the Bankruptcy Court relied on (1) the testimony, evidence, and argument presented at the Confirmation Hearing; (2) pleadings filed by Mitchell, including the Memorandum in Support of Confirmation of the Plan which included Mitchell's Declaration in Support of Confirmation of Trustee's First Amended Plan of Reorganization Dated September 30, 2016; (3) the Summary of Acceptances and Rejections; (4) the Report of Administrative Expenses; (5) the Trustee's First Amended Plan of Reorganization

---

[1] The Amended Memorandum Opinion was not transmitted to this Court by the Bankruptcy Court with the Confirmation Order. Holdner failed to file an Excerpt of Record as required by Bankruptcy Rule 8018(b) and Local Rule 2200-3(d) and thus did not submit a copy of the Opinion. However, Mitchell submitted a copy of the Opinion which has been docketed in this case as ECF 19.

Dated September 30, 2016 ("the Reorganization Plan"), Bankr. ECF 155 ; (6) the Second

Amended Disclosure Statement Regarding Trustee's Plan of Reorganization Dated September 30,

2016, ("the Disclosure Statement"), Bankr. ECF 156, which the Bankruptcy Court approved on

October 6, 2016 (and which Order approving was not appealed); (7) the objecting shareholders'

filings; and (8) the entire record before the Bankruptcy Court.  Dec. 7, 2016 Conf. Ord. 1-2.  The

Bankruptcy Court heard testimony at the November 22, 2016 Confirmation Hearing from

proposed buyer/interested party Richard Kreitzberg, Robert J. McGaughey who was the Trustee's

securities law counsel, Holdner, and Mitchell.  *Id.* at 2.  Exhibits admitted at the Confirmation

Hearing and considered by the Bankruptcy Court in consideration of the Confirmation Order

included exhibits from both Mitchell and Holdner.  *Id.; see also* Dec. 6, 2016 Am. Mem. Op. 1,

10-14 (noting the testimony adduced at the November 22, 2016 Confirmation Hearing and

setting forth the evidence and arguments  presented).

     In the Amended Memorandum Opinion, the Bankruptcy Court noted the basis for its

jurisdiction of the matter and the standards for confirmation under 11 U.S.C. § 1129.  Dec. 6,

2016 Am. Mem. Op. 9-10.  It then described the evidence and testimony presented.  *Id.* at 10-15.

Finally, it addressed the confirmation standards and arguments for and against the proposed

Reorganization Plan.  *Id.* at 15-21.  In the end, the Bankruptcy Court concluded that Mitchell met

her burden of proof with respect to all applicable standards for confirmation of the

Reorganization Plan.  *Id.* at 21.

     Based on that Opinion, the Bankruptcy Court entered the Confirmation Order.  There, the

Court overruled all objections to the Reorganization Plan, confirmed the Reorganization Plan in

all respects except as otherwise set forth in the Confirmation Order, and authorized and

4 - OPINION & ORDER

empowered Mitchell and all other parties in interest to take all actions necessary, useful, or appropriate, to implement, effectuate, and consummate the Plan and the transactions contemplated by the Reorganization Plan and the Plan Documents, and to perform their respective obligations.  Dec. 7, 2016 Conf. Ord. 2.

In entering the Conformation Order, the Bankuptcy Court rejected Holdner's argument that the debtor should be liquidated rather than reorganized.  Instead, under the Reorganization Plan, holders of "Allowed Claims" against the debtor will be paid in full, in cash.  Reorg. Plan. 1, Bankr. ECF 155 ("Plan Summary").  Holders of interests in the debtor may choose either to retain those interests, or alternatively, may sell them at a price of $7 per share which was estimated to be greater than their value in a liquidation.  *Id.*  Thus, all creditors will be paid in full and all shareholders may choose whether to have their interests purchased immediately or continue as investors in the reorganized debtor.  *Id.*  The Reorganization Plan is to be funded by the debtor's issuance and sale of approximately 160,000 - 170,000 shares of new stock, which Kreitzberg agreed to purchase for not less than $7 per share, subject to overbids which may result in a higher per-share purchase price.  *Id.*

## II.  Post-Confirmation Order Events

On the day the Bankruptcy Court filed its Confirmation Order, Mitchell filed and served a Notice of Right to Submit Bid to Purchase Shares of Data Systems, Inc., notifying Holdner and all other parties entitled to such notice that they had a right to submit a bid to purchase the debtor's shares under the Reorganization Plan at a price higher than the $7 per share bid provided in the Reorganization Plan by Kreitzberg, and that the deadline to submit a bid was December 17, 2016.  Bankr. ECF 212.  No other bids were submitted and thus, on December 21, 2016, the

Bankruptcy Court entered an Order Authorizing Issuance and Sale of Common Stock of the

Debtor, Pursuant to Confirmed Chapter 11 Plan (the "Stock Sale Approval Order").  Bankr. ECF

226.

On or about December 23, 2016, Mitchell, now in the post-confirmation role of "Plan

Agent," completed the sale of 170,000 newly-issued shares of common stock, at $7 per share,

receiving $1,190,000 for the bankruptcy estate.  Def.-Appee. Resp. 16.  She then caused to be

filed and served to all shareholders the following two notices: (1) notice of the right to elect to

sell shares of common stock of the debtor for $7 per share, or instead to retain the shares, as well

as the February 2, 2017 offer expiration date; and (2) notice of a special meeting of shareholders

to elect a new board of directors for the reorganized debtor to be held February 16, 2017.  Bankr.

ECF 232, 233.  The deadline to appeal the Stock Sale Approval Order was January 4, 2017 and

no appeal was filed, making that Order final.  To this Court's knowledge, as of this date,

shareholders have either retained their shares or sold them by February 2, 2017, and the special

shareholders meeting at which a new board of directors was elected, has occurred.

III.  Jurisdiction

This Court has jurisdiction to hear this appeal under 28 U.S.C. § 158(a)(1).

IV.  Standard of Review

Generally, a bankruptcy court's decision whether to confirm a Chapter 11 plan is

reviewed for abuse of discretion.  *Marshall v. Marshall (In re Marshall)*, 721 F.3d 1032, 1045

(9th Cir. 2013).  The bankruptcy court "abuses its discretion if it applies the law incorrectly or if

it rests its decision on a clearly erroneous finding of material fact."  *Computer Task Group, Inc.*

*v. Brotby (In re Brotby)*, 303 B.R. 177, 184 (B.A.P. 9th Cir. 2003) (citing *United States v.*

6 - OPINION & ORDER

*Peninsula Commc'ns, Inc.*, 287 F.3d 832, 839 (9th Cir. 2002); *Gonzalez v. Gottlieb (In re Metro Fulfillment, Inc.*), 294 B.R. 306, 309 (B.A.P. 9th Cir. 2003)); *see also Beal Bank USA v. Windmill Durango Office, LLC, (In re Windmill Durango Office, LLC)*, 481 B.R. 51, 64 (B.A.P. 9th Cir. 2012) (court uses two-part test to determine if bankruptcy court abused its discretion by first, determining de novo if the bankruptcy court identified the correct legal rule to apply to the relief requested, and second, to examine if the factual findings were clearly erroneous).

A bankruptcy court's determinations of feasibility, good faith, and the value of property are all findings of fact reviewed for clear error. *In re Windmill Durango Office, LLC*, 481 B.R. at 64; *United States v. Arnold & Baker Farms (In re Arnold & Baker Farms)*, 177 B.R. 648, 653 (B.A.P. 9th Cir. 1994), *aff'd*, 85 F.3d 1415 (9th Cir. 1996). The bankruptcy court's factual findings must be affirmed unless they are "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *In re Windmill Durango Office,* 481 B.R. at 64 (internal quotation marks omitted).

IV.  Bankruptcy Rule 8014

Federal Rule of Bankruptcy Procedure 8014 sets forth several requirements for an Appellant's Opening Brief, including (1) a table of contents, with page references; (2) a table of authorities with references to the pages of the brief where they are cited; (3) a jurisdictional statement, including the basis for the bankruptcy court's subject-matter jurisdiction and the basis for the district court's jurisdiction, with citations to applicable statutory provisions and stating relevant facts establishing jurisdiction as well as an assertion that the appeal is from a final judgment, order, or decree; (4) a statement of the issues presented and, for each one, a concise statement of the applicable standard of appellate review; (5) a concise statement of the case

setting out the facts relevant to the issues submitted for review, describing the relevant

procedural history, and identifying the rulings presented for review, with appropriate references

to the record; (6) a summary of the argument, which must contain a succinct, clear, and accurate

statement of the arguments made in the body of the brief, and which must not merely repeat the

argument headings; (8) the argument, which must contain the appellant's contentions and the

reasons for them, with citations to the authorities and parts of the record on which the appellant

relies; and (9) a short conclusion stating the precise relief sought.  Fed. R. Bankr. P. 8014.

Holdner's "Memorandum in Support [of] Review of Confirmation of Plan," ECF 7,

complies with few, if any, of these requirements.  There is no table of contents, no table of

authorities (in fact, not a single case is even cited), no jurisdictional statement, no statement of

issues, no standard of review, and no summary of the argument.  Instead, Holdner's Opening

Memorandum presents a factual history with no citation to any support, and then includes six

arguments, designated A through F, which are unclear and require interpretation and guesswork

to determine the nature of his contentions.  Pl.-Appnt Op. Mem. 1-12.  Finally, his "Conclusion"

fails to state the precise relief sought other than to assert that the Reorganization Plan contains a

number of errors or omissions as to the facts and law and "should be reversed." *Id.* at 12.

Mitchell argues that this Court should summarily affirm the Confirmation Order given

Holdner's failure to comply with Rule 8014.  Mitchell notes that in addition to the Rule 8014

failures, Holdner failed to file and serve an appendix of important documents under Bankruptcy

Rule 8018(b) and Local Rule 2200-3(d).  Additionally, Mitchell notes that Holdner never ordered

a transcript of the confirmation hearing as required within fourteen days of filing his notice of

appeal, and did not cite to the record in his arguments.  <u>See</u> Fed. R. Bankr. P. 8009(b)(1).

There is authority for summarily affirming a bankruptcy court's order or judgment as a sanction for "gross procedural defects that made review impossible[.]" *Morrissey v. Stuteville (In re Morrissey)*, 349 F.3d 1187, 1189 (9th Cir. 2003). While Holdner's failure to comply with the relevant procedural rules has hampered this Court's ability to review the record and to fully understand his arguments, it has not made review impossible.

This Court was able to obtain its own copy of the relevant Bankruptcy Court documents and, as noted above, Mitchell supplied a copy of the Bankruptcy Court's December 6, 2016 Amended Memorandum Opinion. The only part of the record made unreviewable by Holdner's non-compliance with the relevant procedural rules is a transcript of the Confirmation Hearing. In light of his failure to order and serve the transcript and make it part of the record here, I rely on the Bankruptcy Court's description of the hearing testimony as accurate. Holdner's non-compliance with the appropriate rules prevents him from asserting that the Bankruptcy Court's recitation of hearing testimony is inaccurate. And, Holdner's failure to contain a summary of argument with a "succinct, clear, and accurate statement of the arguments," as well as the failure to cite to the record and to relevant authorities further prevents him from contending that Mitchell's or this Court's understanding and interpretation of his arguments is inaccurate.

## V. Assignments of Error

As noted above, Holdner raises six arguments in this appeal. I address them in turn.

### A.    Issuance of Additional Shares - Tax Free Transaction Under the Internal Revenue Code

Holdner's argument is unclear. In the heading, he asks "[w]hether the issuance of the additional shares would qualify as a tax free transaction under the federal Internal Revenue

Code." Pl.-Appnt. Mem. 7. He sets forth the following facts: (1) debtor is a real estate holding company; and (2) Mitchell testified she was not a tax law expert and did not have experience regarding tax implications. *Id.* He cites to § 355(c) of the Internal Revenue Code for the proposition that investments in real estate do not qualify as a trade or business eligible for tax-free treatment in the issuance of its shares and further, that a corporation may distribute stock to its shareholders without a gain or loss on the distribution as along as the transaction is not principally used as a device to distribute earnings and profits and avoid shareholder-level tax on dividend income. *Id.* at 7-8. He also states that under § 355, investments in real estate for rental purposes do not constitute a trade or business.

After stating these two facts and making these § 355 legal pronouncements, he argues that there is an "uncertainty" and no assurance that the Reorganization Plan is feasible and will survive reorganization or liquidation without incurring potential taxes and penalties of $500,000 or more. *Id.* at 8. As best this Court can understand, Holdner's argument is that issuance of the new shares pursuant to the Reorganization Plan may or may not be subject to certain taxes. As a result, Holdner suggests that the Reorganization Plan is not feasible.

Holdner cites to nothing in the Bankruptcy Court's record showing that he raised this tax argument before the Bankruptcy Court. Generally, issues raised on appeal for the first time are waived absent exceptional circumstances or to prevent manifest injustice. *E.g.*, *Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009). Additionally, his argument is essentially a contention that the Reorganization Plan is not feasible. Feasability, as noted above, is a factual determination reviewed for clear error. Here, in support of its determination that the Reorganization Plan is feasible, the Bankruptcy Court found that Kreitzberg had adequate funds

to purchase the shares and that Holdner offered no evidence showing that the Reorganization

Plan was too speculative to be confirmed.  Dec. 6, 2016 Am. Mem. Op. 17.  Holdner offers

nothing in this appeal to show that the Bankruptcy Court's feasability determination was

erroneous.  Moreover, as Mitchell states, the sale of shares to Kreitzberg is now complete and

Mitchell has sufficient funds to make the necessary payments under the Reorganization Plan.

Finally, the purpose of 26 U.S.C. § 355 is "to give stockholders in a corporation

controlled by them the privilege of separating or 'spinning off' from their corporation a part of its

assets and activities and lodging the separated part in another corporation which is controlled by

the same stockholders." *Comm'r v. Wilson*, 353 F.2d 184, 186 (9th Cir. 1965) (discussing § 355

of the Internal Revenue Code of 1954 which is, in pertinent part, the same as the current § 355

cited by Holdner).  The "real owners" of the assets after such a spin-off are the same persons who

owned them before.  *Id.*  In recognition of that, Congress has allowed, without penalty, "these

real owners" to "have their real ownership divided into smaller artificial entities than the single

original corporation, if the real owners decide that such a division would be desirable." *Id.*

However, Congress recognized that shareholders would "select the part of the assets of an

original corporation which could most readily be converted into cash or its equivalent," then

spin-off those parts into the second corporation and distribute the stock in that corporation to

themselves.  *Id.*  By doing this, the shareholders would "thus have available for sale and capital

gains tax treatment the stock in that corporation, though in fact what they sold represented

accumulated earnings of the original corporation" which, if "paid directly to the shareholders of

the original corporation, would have been fully taxable to them as dividend income." *Id.*

Thus, while allowing certain tax-free distributions, *see* § 355(c), § 355 contains "a

11 - OPINION & ORDER

prohibition against the use of the spin-off as a 'device for the distribution of the earnings and profits of the distributing corporation or the controlled corporation.'" *Id.* (quoting §355(a)(1)(B)).

As this discussion should make clear, § 355 does not apply to the issuance of new shares. The Reorganization Plan provides for no "spin-off" of assets or the creation of another corporation controlled by the same stockholders.   Holdner's argument is baseless.

B.  Fair & Equitable "Cram Down" - Reducing Shareholders' Interests in Debtor's Estate

Holdner questions whether the Reorganization Plan "[i]s fair and equitable in a cram down when it discriminates against other shareholders by reducing their comparable interests in the debtors' [sic] estate."  Pl.-Appnt Op. Mem. 8.  In support of this argument, Holdner asserts that in liquidating real estate assets belonging to the debtor, shareholders would receive $9.55 per share in dividends as opposed to $7 per share under the Reorganization Plan.  Therefore, he argues that the Reorganization Plan is not fair and equitable.

The Bankruptcy Court noted Mitchell's testimony that the shareholder class would receive more under the Reorganization Plan than in a chapter 7 liquidation based on Mitchell's analysis which was set forth in Exhibit A to the Disclosure Statement.  Dec. 6, 2016 Am. Mem. Op. 11. The Bankruptcy Court further noted Mitchell's testimony that shareholders would have the option of selling their shares of the debtor's common stock for an above-market price or retaining their shares.  *Id.* at 12.

The Bankruptcy Court also discussed Holdner's argument that the $7 offering price per share of the debtor's common stock was too low.  *Id.* at 13.  The Bankruptcy Court cited to Holdner's demonstrative Exhibit B and the evidence on which Holdner relied in making his argument that the projected value per share would be $9.55.  *Id.*  The Bankruptcy Court then

found:

> In light of Mr. Holdner's professional experience as a CPA since 1968, I find it
> both surprising and disingenuous that in his calculations to arrive at his $9.55 per
> share value, he deducts nothing for payment of [the debtor's] liabilities, including
> his personal claim for $1,518,262.81 (Claim No. 10 on the claims register); he
> does not discount to present value the $4,000,000 deferred portion of the proceeds
> from his projected $5,000,000 sale of the Main Office property; and he does not
> discount for the risk of nonpayment of the deferred balance of the Main Office
> sale proceeds. [Mitchell] testified that she rejected Mr. Holdner's $9.55 per share
> valuation as not realistic because it did not incorporate a deduction for any of [the
> debtor's] liabilities.  I ultimately conclude that Mr. Holdner's $9.55 per share
> projected valuation for the [debtor's] common stock is not credible, particularly
> considering its failure to incorporate any deduction for [the debtor's] liabilities,
> either existing or on-going.

*Id.* at 13-14.

Then, the Bankruptcy Court explained that Mitchell "presented evidence that the $7 per

share offering price for [the debtor's] stock under the Plan provides a premium over what

shareholders could expect to receive in a liquidation - possibly a substantial premium.  The

evidence submitted through Mr. Holdner's Exhibit B does not present a credible alternative." *Id.*

at 16.

In this appeal, Holdner presents no basis for concluding that the Bankruptcy Court's

finding concerning valuation was "illogical, implausible or without support in the record." *In re*

*Windmill Durango Office,* 481 B.R. at 64.  Accordingly, there is no support for concluding that

the Reorganization Plan was not fair or equitable based on the $7 per share option price.

C.  Plan Confirmation Under 11 U.S.C. § 1129

Holdner suggests that the requirements of 11 U.S.C. § 1129(a)(7) were not met because

Mitchell did not undertake an independent appraisal.  As a result, Holdner argues that the

Reorganization Plan should not have been confirmed.

13 - OPINION & ORDER

In the December 6, 2016 Amended Memorandum Opinion, the Bankruptcy Court noted Mitchell's testimony that the sole impaired class of creditors had voted to accept the Reorganization Plan and that the shareholder class that had not voted to accept the Reorganization Plan would receive more under the Plan ($7 per share to selling shareholders) than in a chapter 7 liquidation based on her analysis as set forth in Exhibit A to the Disclosure Statement.  Dec. 6, 2016 Am. Mem. Op. 11 (citing 11 U.S.C. § 1129(a)(7)).  Later, the Bankruptcy Court explained that Mitchell submitted evidence that the requirements of § 1129(a)(7) had been satisfied and "Mr. Holdner has raised no discernible or effective arguments to the contrary."  *Id.* at 19.

Section 1129(a)(7) requires that in confirming a plan, the court confirm that "[w]ith respect to each impaired class of claims or interests[,]" each holder of a claim or interest of such class has either accepted the plan or "will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date[.]" 11 U.S.C.A. § 1129(a)(7).  Nothing in the statute requires an independent appraisal and Holdner sets forth no basis for concluding that the Bankruptcy Court erred in its finding that § 1129(a)(7) was satisfied.

Holdner also suggests, citing 11 U.S.C. § 1126(g), that the Reorganization Plan cannot be confirmed under § 1129(a) because the class is impaired and has not consented.   However, § 1126(g) addresses plans proposing to eliminate the interests of shareholders.  Here, the Reorganization Plan does not proposed to "eliminate" the interests of any shareholders.  Shares are not canceled under the Reorganization Plan and shareholders may elect to retain their

14 - OPINION & ORDER

interests in the reorganized debtor.

    D.  Confirmation - Tax Avoidance Scheme

Holdner appears to be arguing that the Reorganization Plan is a tax avoidance scheme in violation of the Securities & Exchange Act of 1933.  He cites to no particular statutory provision or to any particular portion of the Reorganization Plan establishing that the Plan is essentially a scheme for avoidance of taxes.  In support of his position, Holdner refers to what he characterizes as a prior "tender offer" by Kreitzberg, states that Kreitzberg's primary residence for tax filing purposes is in Montana, and argues that Kreitzberg's primary objective is avoiding payment of federal and Oregon taxes.  He cites to no part of the Bankruptcy Court record in support of his factual assertions.

In describing the background and history of the debtor and the pre-petition events related to the debtor, the Bankruptcy Court's Amended Memorandum Opinion notes that in a January 2016 federal lawsuit filed by the debtor against Kreitzberg and his affiliated company RAK Investments, LLC, the debtor, through Holdner, alleged that Kreitzberg wrongfully and fraudulently attempted to gain control over the debtor by making a tender offer to purchase shares of the debtor's stock for $7 per share.  Dec. 6, 2016 Am. Mem. Op. 5.  That case, assigned to Judge Simon of this Court and bearing Case No. 3:16-cv-00110-SI, has been stayed due to the debtor's subsequent February 2016 bankruptcy filing.  Counsel for Mitchell now represents the debtor in that case.

Later in its Opinion, the Bankruptcy Court noted that under § 1129(d), the Securities and Exchange Commission (SEC) has "standing to object to confirmation of a chapter 11 plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of

15 - OPINION & ORDER

section 5 [registration requirements] of the Securities Act[.]"  *Id.* at 12-13 (internal quotation

marks omitted).  Further, the SEC was provided copies of the Reorganization Plan and the

Disclosure Statement and was notified of the date of the Confirmation Hearing.  *Id.* at 13.  The

SEC did not appear in the case, did not file an objection to the confirmation, and did not appear

at the Confirmation Hearing.  *Id.*  Additionally, Mitchell presented testimony by special

securities law counsel who stated that he had reviewed the Reorganization Plan and the

Disclosure Statement and perceived no securities law problems.  *Id.*  The Bankruptcy Court

noted Holdner's argument that the Reorganization Plan "is the embodiment of a scheme to allow

Mr. Kreitzberg to avoid paying taxes on dividends that otherwise would be distributed from

Main Office property sale proceeds."  *Id.* at 14; *see also id.* at 16 ("Mr. Holdner objects, alleging

violations of securities and tax laws.").

     The Bankruptcy Court concluded that the Reorganization Plan did not violate the law.  It

explained:

> In her Declaration in support of confirmation, [Mitchell] declared that based on
> her own investigation and advice of Special Counsel, she was not aware of any
> securities-related issues with the Plan. Special Counsel likewise testified that he
> did not perceive any securities law problems.  In light of that evidence . . . , I am
> unpersuaded by Mr. Holdner's lay opinions that the Plan violates the registration
> provisions of the Securities Act and the securities fraud provisions of SEC Rule
> 10b-5.
>
>     I understand Mr. Holdner's argument that confirmation of the Plan may
> further the purpose of Mr. Kreitzberg to avoid paying taxes on [the debtor's]
> dividends at ordinary income tax rates, but I do not agree that avoidance of taxes
> is the Plan's primary purpose. [Mitchell] proposed a plan that will pay all creditor
> claims in full in the short term and will provide a market for sale of the [debtor's]
> share holdings of minority shareholders, a market that does not exist currently.
> [Mitchell] presented evidence that the $7.00 per share offering price for [the
> debtor's] stock under the Plan provides a premium over what shareholders could
> expect to receive in a liquidation - possibly a substantial premium.  The evidence

16 - OPINION & ORDER

submitted through Mr. Holdner's Exhibit B does not present a credible alternative. The Plan provides means to recapitalize [the debtor] with working capital in addition to amounts required to fund the payments of creditor claims and stock buyouts. It further provides a mechanism for resolving the contentious corporate governance issues that have plagued [the debtor] in recent times. Accordingly, I conclude that [Mitchell] has met her burden of proof to establish that the Plan and [Mitchell], as Plan proponent, have complied with applicable law.

*Id.* at 16-17 (citation and internal quotation marks omitted).

Holdner makes only conclusory statements about Kreitzberg's purpose, refers to unsupported facts with no citation to the record, and cites to no case law or specific statutory provision of securities law in support of his contention that the Reorganization Plan violates the Securities & Exchange Act of 1933 because it is a tax avoidance scheme. Holdner offers no plausible argument showing that the Bankruptcy Court erred in its conclusion that no laws were violated and that tax avoidance is not the primary purpose of the Reorganization Plan.

E. Confirmation Without Addressing All Potential Claims

Holdner raises two issues here in support of an argument that the Reorganization Plan is not feasible. First, he notes that without addressing the deferred salary of the debtor's president, there is no assurance that the Reorganization Plan is feasible. Second, he suggests that the Reorganization Plan is not feasible without accounting for the damages to be obtained against Kreitzberg and RAK Investments in the 16-110 case pending before Judge Simon and which will benefit the debtor's estate.

The simple answer to the second issue is that no damages are sought against Kreitzberg in the 16-110 case before Judge Simon. In that case, the debtor seeks only injunctive relief. Additionally, the Reorganization Plan does address the claims against Kreitzberg. Mitchell determined that it would be most efficient to allow the reorganized debtor to determine whether

17 - OPINION & ORDER

to pursue these claims. Thus, the Reorganization Plan provides that the bankruptcy estate's claims against Kreitzberg be "preserved and survive the confirmation of the Plan, and are not waived, but instead are expressly reserved for later adjudication." Reorg. Plan 13, § 9.

As to the salary issue, Holdner filed a claim in the bankruptcy case for $1,518,262.81 for alleged deferred compensation. Mitchell objected to the claim on August 9, 2016. Bankr. ECF 134. There, Mitchell explained that the claim was "at best premature" and recommended reducing it to $0 for purposes of determining the bankruptcy estate's current liabilities. *Id.* at 2. She recommended that the unliquidated claim pass through to the reorganized debtor which would be responsible for evaluating and administering the claim after confirmation of the Reorganization Plan. *Id.* Alternatively, Mitchell objected to the claim in its entirety. *Id.* She noted that Holdner was responsible for the debtor's financials as its president and separately as its CPA and at no point did he disclose to shareholders this "purported 9.0% loan, which does not appear on the Debtor's financials at any point - nor on any tax returns of the Debtor." *Id.*

On October 17, 2016, the Bankruptcy Court conducted a hearing at which it discussed this claim. Bankr. ECF 175. At the time, the Court abated further consideration of the claim objection until after the confirmation hearing had occurred. *Id.*; *see also* Bankr. ECF 176 (Order specifying that a status hearing on Holdner's claim and the objection would follow the confirmation hearing). On December 22, 2016, the Bankruptcy Court conducted a status conference which Holdner attended. Bankr. ECF 229. The Order summarizing that hearing states that claims objections will continue to be abated until someone advises the Bankruptcy Court that a hearing needed to be held. *Id.* There is no indication that Holdner objected to this course of action. The Bankruptcy Court docket shows no request for a hearing.

18 - OPINION & ORDER

Holdner offers no support for why this Court should address an issue he did not pursue with the Bankruptcy Court. The Bankruptcy Court record suggests that Holdner acquiesced in the Bankruptcy Court's decision to set the issue over. Furthermore, his statement that the deferred salary claim was not addressed is inconsistent with the record. Mitchell objected to it and the Bankruptcy Court deferred consideration of the objection apparently without objection. Holdner fails to show that the Reorganization Plan is not feasible because it left his deferred salary claim to be addressed by the reorganized debtor.

F. Mitchell as Disinterested Party & Sufficient Investigation

In his last contention, Holdner appears to question whether Mitchell was a disinterested party as well as whether she conducted a sufficient investigation before proposing the Reorganization Plan. While the captioned title of this argument indicates that Holdner questions Mitchell's disinterestedness, none of his statements or allegations implicate this assertion. Rather, the six specifications Holdner relies on all relate to how Mitchell conducted her investigation before determining that a Reorganization Plan was the best approach.

Holdner alleges that Mitchell met with him and his business partner Jane Baum and found nothing wrong with the handling by them of the debtor's affairs. Next, he states that Mitchell insisted that Holdner and Baum sell their shares to Kreitzberg or risk being sued. He asserts that Mitchell disregarded the Bankruptcy Court's instruction to provide him, "Backstrom, Baum & Co.," a new favorable lease for waiving their fees for the past three years. Next, he alleges that Mitchell made no investigative analysis of the potential sale of real estate owned by the debtor to the Portland Fashion Institute. Holdner then challenges an alleged complaint made by Mitchell that was apparently critical of Holdner's and Baum's maintenance of the property.

19 - OPINION & ORDER

Finally, Holdner states that Mitchell represented that the property had been underutilized.

Mitchell responds by stating that many of these allegations are completely false. As noted previously in this Opinion, Holdner has failed to cite to any portion of the Bankruptcy Court record in support of his appeal and thus, there is no evidentiary support for any of these allegations. Without support, they form no basis for a challenge to Mitchell's investigation. Finally, as stated previously, the Bankruptcy Court detailed the evidence presented by both Mitchell and Holdner regarding Mitchell's proposal for reorganization rather than liquidation which included the sale of real property. The Bankruptcy Court rejected Holdner's evidence and testimony as not credible. Holdner presents no basis for any error in the Bankruptcy Court's finding on that issue.

CONCLUSION

The Bankruptcy Court's December 7, 2016 Confirmation Order is AFFIRMED.

IT IS SO ORDERED.

Dated this _14_ day of _March_, 2017

_Marco Hernandez_
Marco A. Hernandez
United States District Judge

20 - OPINION & ORDER